# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ARTHUR P. BROWN,

        Plaintiff,

vs.                                      CASE NO.   3:04-cv-205-J-TEM

JO ANNE B. BARNHART,
Commissioner of
Social Security,

        Defendant.

## FINAL ORDER[1]

This case is before the Court on Plaintiff's Complaint (Doc. #1), filed March 22, 2004, seeking judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income disability benefits under the Social Security Act.

The Court has reviewed the record, considered the Memoranda of the parties (Docs. #14 & #15), and heard oral argument on September 26, 2005. For the reasons more fully stated in the transcript of the Court's Findings, which is incorporated by reference and attached hereto,[2] the Court has determined the decision of the underlying Administrative Law Judge is not supported by substantial evidence.

Accordingly, it is hereby **ORDERED:**

---

[1] The parties have consented to exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  See Doc. #11.

[2] In the interest of the Court rendering a timely decision, the Court has made minor editorial revisions or corrections to the attached Findings provided by the court reporter.  These revised findings are intended to be the final decision of the Court. However, if any review of this decision is sought, any party may, of course, ask to have a transcript of the Court's original announced findings included in the appellate record.

1. The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. §§ 405(g).

2. The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of September, 2005.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to all counsel of record

```
      IN THE UNITED STATES DISTRICT COURT, MIDDLE DISTRICT

              OF FLORIDA, JACKSONVILLE DIVISION


ARTHUR P. BROWN,                    Jacksonville, Florida

          Plaintiff,                Case No. 3:04-cv-205-J-TEM

-vs-                                September 26, 2005

JO ANNE B. BARNHART,                2:40 p.m.

Commissioner of Social              Courtroom 5 B

Security,

          Defendant.
```

**TRANSCRIPT OF FINDINGS OF THE COURT**

**BEFORE THE HONORABLE THOMAS E. MORRIS**

**UNITED STATES MAGISTRATE JUDGE**

COUNSEL FOR THE PLAINTIFF: (appearing by telephone)

SUSAN R. WALDRON, Assistant U.S. Attorney
*U.S. Attorney's Office*
400 N. Tampa Street
Suite 3200
Tampa, Florida 33602


COUNSEL FOR THE DEFENDANT:

L. JACK GIBNEY
4465 Baymeadows Road
Jacksonville, Florida   32217

Court Reporter:
     L. Marie Splane, RDR, CRR,
     P.O. Box 1196
     Jacksonville, Florida   32201
     Telephone:  (904) 549-1310   Fax: (904) 301-6845

P R O C E E D I N G S

September 26, 2005                                    2:40 p.m.

---

THE COURT: All right, we're back on the case of Arthur Brown versus Jo Anne Barnhart, case 3:04-civil-205-J-TEM.

The procedural history of this case, the plaintiff filed for Supplemental Security Income disability benefits on November 27th of 2000. Transcript 46 and 47.

Plaintiff alleges he became disabled on September 21st of 1998 due to knee, back and neck pain and depression. Transcript 117.

Administrative Law Judge James Russell held the underlying administrative hearing on August 19th of 2003 in Jacksonville, Florida.

The plaintiff appeared and testified at the hearing, as did vocational expert Donna Mancini.

Plaintiff was represented at the hearing by non-attorney Gil Spruance.

The transcript of the underlying hearing is in the record at pages 432 to 472.

The Administrative Law Judge Russell issued his decision denying benefits on October 2nd, 2003. Transcript 12 to 19.

The Appeals Council denied plaintiff's request for

1  review on February 12th of 2004 (transcript 5 to 7), making
2  the ALJ's decision the final decision of the Commissioner.
3       This complaint was filed in federal court on March
4  22nd of 2004, document number 1.
5       The parties filed their briefs and the court
6  heard oral argument this afternoon.  The plaintiff's
7  memorandum is in the file at Document 14 and the defendants's
8  memorandum at Document 15.
9       Under the standard of review, a plaintiff is
10 entitled to disability benefits when he or she is unable to
11 engage in substantial gainful activity by reason of any
12 medically determinable physical or mental impairment which
13 can be expected to either result in death or last for a
14 continuous period of not less than 12 months.  20 CFR,
15 Section 404.1505 and 416.905.  For purposes of determining
16 whether a claimant is disabled, the law and regulations
17 governing a claim for disability benefits are identical to
18 those governing a claim for supplemental security income
19 benefits.  *Patterson versus Bowen*, 799 F.2d 1455 at 1456,
20 Note 1, Eleventh Circuit 1986.  The Commissioner has
21 established a five-step sequential evaluation process for
22 determining whether plaintiff is disabled and therefore
23 entitled to benefits.  See 20 CFR, Section 416.920 and
24 *Crayton versus Callahan*, 120 F.3d 1217 at 1219, Eleventh
25 Circuit 1997.  The plaintiff bears the burden of persuasion

through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen versus Yuckert*, 482 U.S. 137 at 146, Note 5, 1987.

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts versus Bowen*, 841 F.2d 1077 at 1080, Eleventh Circuit 1988, and whether the findings are supported by substantial evidence, *Richardson versus Perales*, 402 U.S. 389 at 390, 1971. The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S. Code, Section 405(g). Substantial evidence is more than a scintilla - in other words, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote versus Chater*, 67 F.3d 1553 at 1560, Eleventh Circuit 1995.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision. *Edwards versus Sullivan*, 937 F.2d 580 at 584, Note 3, Eleventh Circuit 1991. The District Court must view the evidence as a whole, taking into account evidence favorable as well as

1  unfavorable to the decision.  *Foote versus Chater* ~~again~~, 67
2  F.3d at 1560.  And in accord, *Lowery versus Sullivan*, 979
3  F.2d 835 at 837, Eleventh Circuit 1992.
4       The Commissioner must apply the correct law and
5  demonstrate that she has done so.  While the court reviews
6  the Commissioner's decision with deference to the factual
7  findings, no such deference is given to the legal
8  conclusions.  *Keyton versus Department of Health and Human*
9  *Services*, 21 F.3d 1064 at 1066, Eleventh Circuit 1994, citing
10 *Cornelius versus Sullivan*, 936 F.2d 1143 at 1145, Eleventh
11 Circuit 1991.  Therefore, in determining whether the
12 Commissioner's decision is supported by substantial evidence,
13 the court will not re-weigh the evidence, but is limited to
14 determining whether the record, as a whole, contains
15 sufficient evidence to permit a reasonable mind to conclude
16 that the claimant is not disabled.  *Bloodsworth versus*
17 *Heckler*, 703 F.2d 1233, Eleventh Circuit 1983.
18      In this case plaintiff challenges whether the
19 administrative law judge correctly and accurately assessed
20 the plaintiff's medical conditions and the resulting
21 impairments.  Plaintiff's brief at 3.  Plaintiff asserts the
22 assessed residual functional capacity does not comport with
23 the evidence of record and the hypothetical posed to the
24 vocational expert is thus an inaccurate portrayal of
25 plaintiff's condition.  See plaintiff's brief in general.

The Court's independent review of the record as a whole, as required under *Bloodsworth versus Heckler*, 703 F.2d at 1239, reveals the ALJ has misquoted or misconstrued the record on numerous points in this case. For example, the ALJ begins his evaluation of the evidence with the erroneous statement that the claimant was a 50-year-old individual with a high school education and one year of experience. Transcript 13. In fact, the claimant has several years of work experience (transcript 118), but does have one year of college education. Transcript 436. Although that is a minor error, as stated hereinafter, there are other significant misstatements that make it impossible to say the ALJ's decision is supported by substantial evidence, when the record differs from the ALJ's factual findings.

As to the residual functional capacity assessment, in assessing the plaintiff's residual functional capacity, the "RFC," the ALJ determined plaintiff retained the capacity for a significant ranges of light exertional level work with "no more" significant mental limitations. Transcript 16, 17 and 19, finding number 11. The ALJ goes on to state that the evidence supports a finding that plaintiff is able to lift and/or carry, and push or pull 20 pounds occasionally and 10 pounds frequently, plus he can stand and/or walk for approximately two hours and can sit for approximately six hours out of an eight-hour day. The ALJ finds plaintiff

1 capable of using his arms and hands for routine grasping,
2 holding and turning objects without limitation, and capable
3 of occasional bending and/or stooping.  Transcript 16.
4         Plaintiff challenges the assessed RFC as to his
5 physician limitations and asserts the medical evidence from
6 the treating doctors indicates that he is restricted to a
7 reduced range of sedentary work.  Plaintiff's brief at 3.
8 Plaintiff does not challenge the ALJ's assessment of his
9 alleged mental impairment due to depression.  The Court finds
10 the ALJ's mental impairment analysis, in the record at
11 transcript 15 to 17, accurately reflects the record and is in
12 accord with the regulations.
13         The residual functional capacity is an assessment,
14 based upon all of the relevant evidence, of a claimant's
15 remaining ability to do work despite the claimant's
16 impairments.  20 CFR, Section 416.945.  The Eleventh Circuit
17 has noted that the focus of an RFC assessment is on the
18 doctors' evaluations of a claimant's condition and the
19 resulting medical consequences.  *Lewis versus Callahan*, 125
20 F.3d 1436 at 1440, Eleventh Circuit 1997.
21         Here, the ALJ has not accurately portrayed the
22 treating physicians' evaluations of plaintiff's medical
23 condition, or at least all of them.  The Administrative Law
24 Judge stated, "None of the claimant's treating physicians
25 have identified any specific limitations, nor have they

identified any specific restriction in the claimant's activities." Transcript 15. However, a review of the record reveals otherwise.

On November 4th of 1999, approximately three months after the knee surgery, Dr. Paul Shirley, M.D., stated in his treatment notes that plaintiff cannot go up or down stairs, claim on or off, or in or out of a truck. Dr. Shirley suggested consideration of retraining plaintiff for light work at that time because it was unlikely plaintiff could return to any heavy duty work involving the referenced activities. Transcript 147. On January 18th of 2000, Dr. Shirley specifically restricted plaintiff to light duty activities that did not involve squatting, kneeling or any prolonged standing. He further stated plaintiff would need an option to stand if he sits while doing activities, and that plaintiff has unlimited upper extremity work capacity. Transcript 146. On August 24th of 2000, Dr. Shirley noted that plaintiff can't squat, kneel or climb and cannot sit for any length of time without ache and discomfort. Transcript 145. He also stated plaintiff could be retrained to sedentary activities that did allow him to stand or walk for short periods and to sit unlimited with the right to stand or walk with no heavy carrying or lifting. Transcript 145.

On March 1st, 2001, Dr. R.L. Sykes with St. Vincent's Primary Care noted no walking and no strenuous

```
 1  activity in his progress notes for plaintiff.  Transcript
 2  215.  Treatment notes dated September 7th of 2001 that appear
 3  to be from Shands Hospital, Jacksonville, Florida, are in the
 4  record and contain a notation in the planned treatment
 5  section directing plaintiff to minimize walking and standing.
 6  Transcript 265.
 7           Further, if the ALJ did not actually misstate the
 8  record concerning Dr. Rogozinski's recommended treatment for
 9  plaintiff's back impairment, it is apparent his finding
10  misconstrues the record.  The ALJ finds, "While there is a
11  letter dated November 28, 2000, which sets forth cost
12  estimates for a lumbar fusion, nowhere in Dr. Rogozinski's
13  treatment records did he recommend a spinal fusion."
14  Transcript 15.  However, the letter to which the ALJ Russell
15  refers was signed by Dr. Rogozinski and specifically states,
16  "It has been recommended that he (referring to plaintiff)
17  undergo a spinal fusion at L5-S1. Transcript 150.
18  Dr. Rogozinski's treatment notes dated April 27th of 2000,
19  state in relevant part, "discussed indications of surgery for
20  L5-S1 and associated surgical technique and risks...."
21  Transcript 158.  Dr. Rogozinski's treatment notes dated July
22  19th of 2000 reflect, "...he (again referring to the
23  plaintiff) verbalizes his understanding and desire to proceed
24  with surgery of L5-S1 fusion."  Transcript 152.  Plaintiff
25  testified that back surgery had been recommended, but he
```

1  declined the surgery because no one had given him any
2  guarantees that the surgery would decrease the pain.
3  Transcript 449 to 440.  Here, the plaintiff's testimony is
4  not contradicted by the record evidence, but it appears the
5  ALJ has misconstrued the record in making an erroneous
6  factual finding.
7         In the case of *Baker versus Barnhart*, case
8  03-C-2291, at 2004 WestLaw 2032316, Northern District of
9  Illinois, September 9th, 2004, the court ordered the case to
10 be remanded to the Commissioner where the ALJ had misstated
11 the record and failed to address the physician limitations
12 found by the plaintiff's treating physician or physicians.
13 The court finds that opinion to be persuasive, given the
14 facts of this case.
15         Also, in evaluating plaintiff's credibility, the ALJ
16 appropriately considers plaintiff's activities of daily
17 living, but again fails to accurately state the record in
18 making his findings.  The ALJ finds that plaintiff reported
19 being able to do household maintenance activities, including
20 limited sweeping, washing clothes, and grocery shopping
21 despite his pain.  Transcript 16.  However, plaintiff's
22 testimony was that he did "no sweeping."  Transcript 446.  He
23 helps his roommate at the laundromat by maybe putting clothes
24 in the washer or folding a few clothes (transcript 446), and
25 he goes to the grocery maybe once a month with his roommate.

1  Transcript 447.  Plaintiff did testify that he rides an
2  exercise bike and can lift 50 pounds at a time.  Transcript
3  449.  Plaintiff did tell his psychiatrist, Dr. David
4  Cheshire, M.D., that he was capable of doing light housework
5  around his home.  Transcript 176.  However, this information
6  was reported to the psychiatrist on September 25th of 2000,
7  not August 11th, 2000 as indicated by the ALJ.  Transcript
8  16.  Plaintiff did testify he has social contact with
9  friends, but that he visits with friends "on occasion," not
10 "regularly" as found by the ALJ.  Transcript 449 and at 16.
11 At the August 2003 hearing, plaintiff testified the last time
12 he went out to dinner with friends was in March 2003, some
13 four to five months earlier.  Transcript 449.
14         The law of the Eleventh Circuit sets forth that a
15 clearly articulated credibility finding will not be disturbed
16 by a reviewing court when it is supported by substantial
17 evidence.  *Foote versus Chater*, 67 F.3d at 1562.  Here, the
18 credibility finding was clearly articulated, but it was
19 ultimately based upon some misstatements of the record
20 evidence.  Thus, the ALJ's reasons for discrediting
21 plaintiff's testimony were inadequate, at least in part, and
22 his assessment is not supported by substantial evidence.  See
23 *Foote versus Chater*, 67 F.3d at 1552.
24         Plaintiff's use of a cane for ambulation is another
25 area where there is some ambiguity in the record that does

1  not support the ALJ's finding.  The ALJ found there was no
2  indication from the treatment records that plaintiff was ever
3  advised [TEM] by a treating source to use the cane on a sustained
4  basis.  Transcript 16.  In response to a question by his
5  representative, plaintiff testified he had been prescribed a
6  cane.  Transcript 442.  Plaintiff refers to a Dr. Forbis, but
7  it is not clear that treatment records for that source are in
8  the record.  However, plaintiff was directed to use a cane
9  for ambulatory assistance on May 13th of 2002 by a treating
10 source whose signature is illegible.  See transcript 394.
11 Whether that is Dr. Forbis, or whether that is a physician's
12 assistant with initials by a doctor, is not clear from the
13 record.
14         The Ninth Circuit has found remand was warranted
15 where the ALJ's "paraphrasing of record material is not
16 entirely accurate regarding the content or tone of the
17 record."  *Reddick versus Chater*, 157 F.3d 715 at 723, Ninth
18 Circuit, 1998.  This Court agrees and finds just such a case
19 in this instance.
20         While each misstatement of the record when viewed
21 individually may not constitute such error as to require
22 reversal, the numerous misstatements taken as a whole reveal
23 an inaccurate review of the record.  Thus, the Court does not
24 find the decision of the ALJ is based on substantial evidence
25 and this case must be remanded to the Commissioner for

1  reevaluation of the record as a whole.

2           Further, on remand, the Commissioner may hold other
3  proceedings as she deems necessary, but in any event shall
4  reassess plaintiff's credibility and plaintiff's residual
5  functional capacity in light of this opinion and of the
6  accurate record in the case.  In accordance with binding
7  precedent, this Court has not and may not re-weigh the
8  evidence to make its own determination on plaintiff's
9  asserted disability.  And in remanding, the court is not
10 trying to indicate a specific disagreement with the ALJ's
11 determination.

12          I caution plaintiff, however, that this opinion does
13 not suggest plaintiff is entitled to disability benefits.
14 Rather, it speaks only to the process the ALJ must engage in
15 and the findings and analysis the ALJ must make before
16 determining whether plaintiff is disabled within the meaning
17 of the Social Security Act.  *Phillips versus Barnhart*, 357
18 F.3d 1232 at 1244, Eleventh Circuit 2004.  Thus, the court
19 will order a remand for the purposes stated.

20          Thank you, counsel, for your argument today.  Is
21 there anything else we can take up?

22          MR. GIBNEY:  No, Your Honor.

23          MS. WALDRON:  No, thank you, Your Honor.

24          THE COURT:  All right.  I thank you, Ms. Waldron,
25 Mr. Gibney.  We'll be in recess.

1           THE MARSHAL:  All rise.

2           (Proceedings concluded at 3:03 p.m.)

```
 1                    C E R T I F I C A T E
 2
 3  UNITED STATES DISTRICT COURT)
 4  MIDDLE DISTRICT OF FLORIDA)
 5
 6       I hereby certify that the foregoing transcript is a
 7  true and correct computer-aided transcription of my stenotype
 8  notes taken at the time and place indicated therein.
 9
10
11
12
13  _____
    L. MARIE SPLANE, Official Court Reporter,
14  United States District Court,
    Middle District of Florida.
15
16
17
18
19
20
21
22
23
24  Registered Diplomate Reporter (RDR)
25  Certified Realtime Reporter (CRR)
```